## Anshutz *against* M'Clelland.

Where there are several mechanics' liens filed against the same house, a proceeding and sale of the house, by the sheriff, upon any one of them, divests the lien of all, and the purchaser will hold it discharged of the incumbrances. The proceeds of such sale will be divided *pro rata* among such lien creditors.

A *scire facias* upon a mechanic's lien is a proceeding *in rem*, and after a judicial sale of the property, upon which the mechanics' claim is a lien, a *scire facias* will not lie upon it.

A mechanic's lien may be entered against a lessee of the property, who was the contractor with the mechanic for the erection of the building.

ERROR to the common pleas of *Alleghany* county.

David M'Clelland against Robert M'Culloch and George Anshutz, Jun.; *scire facias* sur mechanics' lien.

By a deed of marriage settlement between George Anshutz, Jun. and Eve Hamshire, of the first and second part, and Francis Herron, of the other part, there was conveyed a lot of ground to the said Francis Herron, in trust for the separate use of the said Eve, during life, with remainder to her issue, &c., and in default of issue, for the said George Anshutz, if he survived his wife, &c. George Anshutz, Jun., subsequently leased the property to Robert M'Culloch, for the term of six years, at the annual rent of 400 dollars. Certain improvements were to be made upon the lot by M'Culloch, which were to be paid for out of the rent. M'Culloch, with the knowledge of Anshutz, built a two story brick tan-house upon the lot, which was done by contract, with David M'Clelland. When the building was finished, the mechanics and material men entered their claims as liens against the property; in some of them, the claims were entered against M'Culloch alone, and in others against M'Culloch and Anshutz. One of James Abercrombie was entered against M'Culloch alone, and upon this a *scire facias* issued, a judgment was obtained, execution issued and the property was sold by the sheriff, for 400 dollars, a sum insufficient to pay the mechanics' liens.

Subsequently to this judicial sale of the property, this cause came on for trial, and the defendants contended that there could be no recovery; on the ground, that the proceeding was *in rem*, and the judicial sale divested the property of the incumbrance.

The cause came up upon exceptions to the opinion of the court, of which this is the material part:

1. The plaintiff under those acts of assembly filed his claim on the 5th of August 1833, for 564 dollars and 96 cents, to October term 1833, and to the same term he issued, pursuant to the provisions of the second section of the act of the 28th of March 1808, his writ of *scire facias* against Robert M'Culloch and George An-

shutz, Jun., the first named being the "debtor," and the latter the "owner," or reputed owner of the building intended to be reached by the proceeding.   In this the court can see nothing irregular, for although, by the testimony of Thomas Liggett, the jury may believe that the contract for building the shop was entered into between David M'Clelland and Robert M'Culloch, yet in associating George Anshutz, Jun., with the contractor or debtor, in the writ of *scire facias*, the plaintiff did no more than pursue the express directions of the act of assembly.  Supposing Anshutz to have been the owner of the building, this much in answer to the first point submitted by the counsel for defendants.

2. Although the supreme court have decided in general terms, that a "judicial sale divests all liens whether general or specific," 1 *Penns. Rep.* 113, yet it is believed, that the description of the lien now before the court, was not intended to be embraced in that decision; and that it is in the language of the supreme court in the case just cited.  "An exception to the rule grounded on special and peculiar circumstances."   This lien may be likened to that which a widow has upon land for her interest by the intestate laws, which would not be divested by a sheriff's sale of that land upon a judgment whose lien was subsequently obtained.  Fisher *v.* Kean, 1 *Watts' Rep.* 259.

The act of the 17th of March 1806, established the lien without limitation, except in one case, that is to say, the lien shall continue but two years from the commencement of the building, unless an action for the recovery of the debt be instituted, or claim filed within six months after furnishing materials, &c., in the office of the prothonotary of the county.  With this exception, the lien is indefinite in duration, and is not subject to the limitation of five years, as judgments are by the act of the 4th of April 1798.   Knorr *v.* Elliot, 5 *Serg. & Rawle* 49.   Nor, as the court think, do the doctrines, which now prevail as to divesting of liens by sheriff's sales, as between judgments, apply to such a lien as that now in question, specifically given by statute, and clinging to the building until satisfied even in the hands of a purchaser at sheriff's sale upon a judgment whose lien was subsequently obtained.

The case in 1 *Penns. Rep.* was that of a legacy charged upon land, and it was decided that the sheriff's vendee took the land discharged from the legacy.  In the same book it was decided that mortgages should be divested of their lien by a judicial sale upon a judgment junior in date.   This decision is rendered inoperative for the future, by the act of the 6th of April 1830.   The case of mechanics' lien, under the act of the 17th of March 1806, is nowhere adverted to in the several decisions upon the effect of judicial sales, and it is believed to be grounded upon circumstances so special and peculiar, as to fall within the exception alluded to by Judge Rogers, in 1 *Penns. Rep.* 112; at all events the court is not inclined to go beyond the cases directly decided for the purpose of adding

[Anshutz v. M'Clelland.]

to them another and a numerous class of meritorious creditors. It will be time enough to declare that mechanics and material men are within the rule, when the supreme court have so decided. The court has thus noticed the second point of defendants counsel, more with the view of giving a distinct reply to it, than because it is conceived as properly arising in the case.

The present is a proceeding by *scire facias,* under the act of 1808, instituted for the purpose of ascertaining the amount due upon the claim filed, in the present aspect of the case. The court is by no means satisfied that the effect of the proceedings in Abercrombie's case can have any thing to do with the right of the present plaintiff to go on by *scire facias,* and have the amount due upon his lien ascertained by a jury.

3. The counsel for the defendants allege, " that George Anshutz, Jun., is not the owner of the building, the legal title being vested in Francis Herron, for the use of Eve Hamshire, and therefore, said George is not properly a party to this record, and there can be no recovery against him."

As was stated by Chief Justice Gibson, in Savoy & Salter *v.* Jones, 2 *Rawle* 350, the object of the legislature was to enable the mechanic or material man to follow his labour or materials into the building, which is pledged for the price without regard to the estate of the owner.

The lien arises from the credit having been given not to the owner but to the building; and in a decisive majority of cases, (and as is presumed here,) the labour or material is furnished to master builders who have no interest in the ground upon which the house may be erected.

The act has always received a liberal construction in favour of the mechanics and material men, and the doctrine now contended for by the counsel for the defendants, while it places the security of those objects of legal protection in a a very hazardous and uncertain position, and exacts too much from the workman and material man, would, it is thought, defeat in a great degree the wise and benevolent intention of the legislature. What is the mechanic or material man bound to look to? Is he bound to search the records of the county, for the purpose of ascertaining the state of the title to the ground upon which he is about erecting a building? The court think not. Independent of the testimony given to show acts and declarations by George Anshutz, indicative of ownership, the deed of trust itself, discloses a contingent interest in him to the ground upon which plaintiff erected the building. The court is of opinion that enough has appeared in the case to warrant the name of George Anshutz, Jun., as a party to the record.

*M'Candless* and *Fetterman,* for plaintiff in error.
*Mahon* and *Forward,* for defendant in error.

v.—3 m

[Anshutz v. M'Clelland.]

The opinion of the Court was delivered by

KENNEDY, J.—The counsel for the plaintiffs in error, who were the defendants below, made several points, upon which they requested the direction of the court to the jury. And they have assigned for error here, that the court erred in their charge to the jury upon each of them.

It is not necessary, however, to express or give any opinion excepting on the second; because, we consider the objection, thereby raised insuperable and sufficient to prevent the plaintiff's proceeding any further in the court below upon his writ of *scire facias.* Where there are various liens filed, in conformity to the acts of assembly passed on the subject, by different mechanics and lumber and material men against the same house, for work done and lumber and materials furnished and used in the construction thereof, it is clear that a proceeding and sale of the house upon any one of the liens will release it from the whole of them; and the purchaser at the sheriff's sale will accordingly hold it entirely discharged therefrom. This is perfectly manifest from the language of the act of 1806, because it is expressly provided that " if the house should not sell for a sum of money sufficient to pay all the demands for work and materials, then, and in such case, the same shall be averaged, and each of the creditors paid a sum proportioned to their several demands.'' This shows demonstratively, that there can be but one sale, and that that having been once effected by a proceeding in the case of any of such lien-creditors, no proceeding can be carried on afterwards with a view to a second sale. The proceeding by *scire facias* in such case, under the act of 1808, is *in rem* merely, as appears by the act, which provides " that no judgment rendered in any *scire facias* shall warrant the issuing an execution, except *against the building or buildings upon which the lien existed;*'' and therefore, it is only to be sustained, upon the ground that the claim is a lien upon the house; so that the moment the claim ceases to be a lien, the right of the party to proceed by or maintain a writ of *scire facias* ceases also. In this case Abercrombie's claim was as much a lien upon the house as that of the defendant in error, and embraced precisely the same interest and estate, although in filing his claim, and in suing out his writ of *scire facias,* he omitted to introduce the name of Anshutz in conjunction with that of M'Culloch. M'Culloch alone was the person with whom Abercrombie made the contract, out of which his claim arose; and therefore, in filing his claim and stating the contract, upon which it was founded, he could not with truth or propriety introduce the name of Anshutz as his debtor: But if M'Culloch caused the house to be built with the approbation and consent of Anshutz, the interest or estate of the latter in the house or ground, upon which it was erected, was just as liable for the payment of Abercrombie's claim, as if Anshutz himself had been the contractor with Abercrombie for the materials furnished by him. The proceeding in the *scire facias* at the suit of Abercrombie being,

[Anshutz *v.* M'Clelland.]

as has been shown, not a proceeding against the person named therein as the defendant, but a proceeding against the estate or thing bound for the payment of the claim, the award of the execution by the judgment of the court in the *scire facias* must, therefore, be considered as being co-extensive with the plaintiff's lien, and as against the whole estate in the house bound by it, whether the owner thereof was made a party to it or not. It may be, that where the owner of the house is not made a party to the *scire facias*, he may not thereafter be precluded from setting up any defence in an action of ejectment brought against him by the purchaser at sheriff's sale, which he might have made in the *scire facias*, had he been warned by it. The act of 1808, which authorizes the suing of the writ of *scire facias* upon a mechanic's lien " against the debtor and *owner* of the building," to notify them to show cause, if any they have, why the plaintiff should not have execution for the amount of his debt against the building, can only be considered directory, so far as it provides for the *scire facias* being sued out against the *owner*: It would be attended with great inconvenience, as well as tend to defeat the purpose of the act, if it were to be held otherwise; for the owner may, or may not, be known to the creditor, and it was certainly not the intention of the legislature, that his security for the payment of his debt, or that his remedy for recovering it, should be lessened or diminished in the least, because he might not know the owner; and if the owner, when not made a party to the writ, be permitted to defend in the ejectment, as he might have done in the *scire facias*, had he been warned in pursuance of it, no injustice or injury can accrue to him from his name being left out of it. That Anshutz consented to the putting up of the building in this case, is abundantly clear from all the evidence, without the slightest contradiction; and if he were to attempt to recover the possession of the building from the purchaser at sheriff's sale after his lease to M'Culloch shall have expired, it would be sufficient to defeat his recovery, to show the fact that the building had been put up with his consent, unless he could prove that the claim was unfounded or had been actually paid anterior to the award of execution in the *scire facias*.

It has, however, been insisted on by the counsel for the defendant in error, that he had a right to proceed in his *scire facias*, notwithstanding the sale of the house at the suit of Abercrombie, for the purpose of ascertaining the amount of his debt: but it is a total misapprehension of the real object of suing out the *scire facias*, to suppose that such was the design of authorizing either the impetration or the prosecution of it: because, as has been shown, it cannot be sustained, if the claim or debt mentioned in it never was a lien, or that though once a lien, it has ceased to exist. The only object of the *scire facias*, is to have execution against the building; but if that cannot be had, then the great object of the writ is gone : the ascertainment of the amount of the debt, for which the plaintiff in the

*scire facias* claims to have execution against the building, is only incidental and preliminary to the award of execution, in order that the amount of the money to be levied may be rendered certain and known.   But if no execution can be awarded, there is no occasion for ascertaining the amount.   If, however, there should be any controversy as to the amount of the debts, which were liens, coming to any of the mechanics or others who furnished materials for the completion of the building, after it shall have been sold, and the money arising therefrom brought into court for appropriation or distribution, the court have the power, if it should be necessary, to have the amount ascertained by a jury, to order a feigned issue for that purpose, when all the parties concerned in the fund, will have notice and an opportunity of being fully heard, which cannot well be in a *scire facias* at the suit of any one of them without notice to the others, which is never given.

The interest or estate of Doctor Herron *as* trustee, and that of Mrs Anshutz, the *cestui que trust*, and wife of George Anshutz, have been referred to in the argument; and an attempt was made to introduce them into the discussion, with a view to obtain from this court a decision of the questions, whether they were not also bound by the liens of the debts incurred in putting up the building; and if so, whether they were not transferred by the sheriff's sale : but these persons last mentioned, are not before us; nor does this case require us to give any opinion upon these questions.   When they come to be fully investigated and duly considered, they may, perhaps, be thought to be of very grave and serious import; and as the parties whose rights are involved in them are not in court, we think it would be improper even to intimate an opinion on the subject, either upon the one side or the other.   But, we think the court erred in their charge to the jury on the second point submitted by the counsel of the defendants below, in advising them *that the sale* of the house, made by the sheriff under the execution awarded in favour of Abercrombie for his debt, did not discharge the lien of the plaintiff below in this case, and that the *scire facias* sued out by him was a proceeding instituted under the act of 1808 for the purpose of *ascertaining* the *amount* due upon his claim filed.

Judgment reversed.