IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT, MAY TERM 1838.

## Bickel *against* James.

An equitable vendee of a lot of ground, who has not paid the purchase money, by building a house upon it, subjects it to the lien of mechanics and material-men; and if sold upon such lien, the sheriff's deed vests in the purchaser a good title, against which the vendor cannot recover in ejectment upon his legal title.

ERROR to the common pleas of *Berks* county.

William James against Anthony Bickel. Ejectment for a house and lot in the borough of Reading. It was conceded that the plaintiff, at one time, was the owner of the lot in dispute.

It appears, by the testimony of Michael Fisher, that he purchased the lot from James, the plaintiff, for 250 dollars. The contract was not in writing. Fisher was to pay for the lot before he got his deed. He did not pay for the lot, nor did he get his deed. He was to have possession of the lot immediately after the agreement, and did take possession, and build thereon. Fisher borrowed from Esquire Becker 250 dollars, which he gave James, on account of the lot. James went Fisher's bail in a bond to Becker for this borrowed money, and took a bond, which was produced, in which Fisher agreed that he was to have no claim to the lot until he had paid this money to Becker. Fisher did not pay the money, and James paid Becker the money, and took an assign-

VII.—B

ment of the writing, which was dated 20th December 1832. The assignment was dated 28th April 1835.

In building a house on said lot, Fisher contracted debts with lumbermen, for materials used in said building, to the amount of several hundred dollars.

Drexel, one of the creditors, issued a *scire facias* on his lien, and obtained judgment on the 10th of August 1835. On this judgment a *fieri facias* issued to November 1835, which was levied on this lot. A *venditioni exponas* issued to November term 1836, and the property was sold to Anthony Bickel for 700 dollars. The sheriff's deed is dated the 14th of November 1836, and was acknowledged the same day. The sum of 700 dollars was all paid in extinguishment of the said liens on said lot.

The plaintiff has brought this ejectment on his legal title, to compel the payment of the purchase money due him. The defendant contends that his right was extinguished by the sheriff's sale, and that he cannot recover.

It was in proof that the plaintiff, at the sheriff's sale, gave full notice that he held the legal title, and that the whole amount of the purchase money was still due him and unpaid.

The court below thus delivered their opinion to the jury:

"We think the sheriff's sale does not change the character of the parties. The purchaser at sheriff's sale succeeds to all the rights of the vendee. On payment, or tender of the purchase money, he may demand and enforce the consummation of the contract by the execution of the deed. But this he could not do without the tender or payment. If he could not compel the execution of the contract, without payment or tender, how can he resist the force of the legal title thus in the plaintiff, without payment or tender? The attitude of the parties would appear to be the same in each case; the relation of vendor and vendee still subsists, and the defendant holds subject to the payment of the purchase money."

*Filbert*, for plaintiff in error, cited, *Purd. Dig.* 595; 5 *Watts* 492; 2 *Penns. Bl.* 229; 2 *Rawle* 343.

*Hoffman* and *Smith*, for defendants in error, cited, 3 *Serg. & Rawle* 397; 2 *Watts* 378; 6 *Watts* 339.

The opinion of the Court was delivered by

GIBSON, C. J.—By the primitive act of 1803, supplied by the act of 1806, on which, with the supplement of 1808, the present question depends, the legislature hypothecated buildings for debts contracted in the construction of them. No more was contemplated in it than the usual case of a builder on his own ground; and hence, in an action against the legal owner, a lien was not allowed for materials furnished on the order of a vendee, by articles of agreement, because an action to enforce it could be maintained only on

[Bickel v. James.]

the contract by which the debt was incurred, and of which the lien was an accessory. Stinemetz *v.* Boudinot, 3 *Serg. & Rawle* 541. The legislature had provided no means of enforcement but an action; and it could, of course, be maintained only against the contractor. Had it been brought against him in that instance, it would have raised a question like the present, but depending on different provisions; yet it might not have been impossible to maintain, even under the act of 1803, that an equitable vendee was an owner within the purview of it. That it would certainly have been so adjudged, I pretend not to assert; for the lien having been but an accessory of an inchoate estate, might readily have been postponed to the legal title; and I think it probable that a mechanic's lien, like a judgment, would have bound only the equitable estate of the vendee. But the glimpse which the legislature then had of the subject, was barely sufficient for a sketch of its first lines; for it was soon found in the city of Philadelphia, and those districts of the county to which the primitive act was confined, that contracts for labour and materials were usually made, not by owners building for themselves, but by architects employed to build and contract on their own credit. Hence a radical change in the principle of hypothecation by the act of 1806. The lien was no longer an accessory of the owner's title, but became an independent incumbrance; insomuch as not to require a title to have been in him at all. Every thing about ownership was suppressed, and the building itself became the principal debtor, but still answerable only by an action against the contractor. Then came the supplement of 1808, which gave, in addition, a *scire facias*, jointly against the owner and the contractor; and strictly as a proceeding *in rem*. As was recognised in Savoy *v.* Jones, 2 *Rawle* 343, the credit, under these two acts, was primarily given to the building; and though the builder, also, was liable on his contract, the action, so far as it was used to enforce the lien, was also a proceeding *in rem*. It is entirely omitted in the act of 1836, which has superseded all antecedent legislation on the subject. But the project of the legislature, in the preceding acts, has been, as it still is, to secure to the mechanic, or material-man, the fruit of his labour or materials, by selling the building, of which it happened to be a component part, without regard to the ground. The latter was a subject of so little consideration as not to have been mentioned in either of them; and that it is sold as an appurtenance of the building, is because it could not be severed from it. But where the building and the ground fetch, as they must generally do, more than the amount of the liens, I see not what difficulty there can be, according to an obvious principle of equitable conversion, in substituting the surplus purchase money for the realty which produced it, and giving it respectively to the owners of the fee in proportion to their interests in it. By this, there can seldom be a loss, and never an injustice; for the question is, whether the building shall follow the ownership of the ground, or the ground follow the owner-

ship of the building.   If decided for the claimant, the owner will, in *most* cases, be paid for his ground ; but if for the owner, he will, in *all* cases, get the benefit of another's uncompensated labour or materials in addition to it.   Were the building sold without the ground, the interests in the freehold would not be disturbed; but as that is impracticable, a consequent loss may sometimes have to be shared by claimants, under the same title, of separate interests in the fee. It may be, however, that an adverse title would not be affected.   A trespasser, in possession, is not allowed to charge the owner for adverse improvements; and it may not have been the design of the legislature to give a greater power to agents in his employment, who are also trespassers.   On that, however, we express no opinion; but as the plaintiff claims by a title which was subsequently hypothecated, we are of opinion he can claim only in subjection to the liens, and not at all against a purchaser under them.

Judgment reversed.