## Holdship *against* Abercrombie.

A tenant for years of a lot of ground who procures a building to be erected thereupon, thereby subjects it to a lien in favor of the mechanics and material men for their work, labor, and materials furnished; and a proceeding thereupon to judgment, execution, and sale of the property will divest the owner of the fee-simple of his estate, and vest the same in the purchaser from the sheriff.

ERROR to the court of common pleas of *Allegheny* county.

The heirs at law of James Abercrombie deceased in trust for themselves and other lien creditors against George W. Holdship, and Thomas Douthit. Ejectment for a lot of ground in Pittsburgh, upon which a tan-house was erected.

Doctor Hernon, previously to the marriage of George Anshutz and his wife, in contemplation of the same taking place, became invested with the legal title to the lot or parcel of ground in question, in trust for the separate use of Mr Anshutz. All the parties lived within the city of Pittsburgh, where the property is situated. After the marriage, Mr Anshutz, the husband, took possession of the lot, as though his wife had been seised of the legal estate at the time, and no deed of trust had ever been executed. This, however, it would seem, he did with the implied, if not the express, assent of Doctor Hernon, the trustee, as he made no objection to it. After taking the possession, he gave a lease of it to Mr M'Cullough, for a term of six years. During the term, Mr M'Cullough contracted for and caused a building to be erected upon the lot, with the approbation, and as it appears from the evidence in conformity in some particulars, to the direction of Anshutz. In effecting this, M'Cullough contracted a mechanic's debt or claim, which was afterwards, in due time, filed in the prothonotary's office, as a lien against the building under a contract made with him, as the owner thereof. Upon this claim thus filed as a lien, a writ of *scire facias* was sued out of the common pleas against M'Cullough, and a judgment obtained therein, awarding execution for the amount of the claim against the building; which was accordingly taken in execution afterwards, and sold by the sheriff to Aber-

crombie, the ancestor of the defendants in error. These are the facts of the case, as they appeared in evidence, about which there does not seem to have been much, if any, controversy. The question raised upon them is, did the acts of assembly, securing to mechanics and others, payment for their labor and materials in erecting houses or other buildings within the city of Pittsburgh, make the debt for which the lot and building was sold a lien upon the fee simple estate?

The court below, (Dallas, president,) upon the authority of the cases of Savoy *v.* Jones, 2 *Rawle* 350, and Anshutz *v.* M'Clelland, 5 *Watts* 487, directed the jury to find for the plaintiffs.

*M'Candless* and *Shaler*, for plaintiffs in error.
*Forward*, for defendants in error.

The opinion of the court was delivered by

KENNEDY, J.—By the act of the 1st of April, 1803, which was the first that was passed on the subject, the house or building only was made subject to the payment of debts created on account of materials furnished or work done in constructing it, when concracted for by the owner thereof himself. But as the great object was to make mechanics and others secure in receiving payment for their labour performed, and materials provided in the erection of buildings, it was found that giving them a lien on the building only, where the debts were created by the owner himself, by his contracting for the labour and materials used in erecting it, was a very inadequate security: Because in many, if not in most instances, such debts were created upon contracts made with undertakers merely who were not the owners of the buildings, but had contracted with the owners to put them up. This, therefore, induced the passage of the act of the 17th of March, 1806, which made every dwelling-house, or other building, thereafter constructed and erected, liable to the payment of the debts contracted (omitting the words " by the owners thereof," which were in the act of 1803,) for, or by reason of any work done, or materials found and provided by any brickmaker, bricklayer, stonecutter, mason, lime merchant, carpenter, painter and glazier, ironmonger, blacksmith, plasterer and lumber merchant, or any other person or persons employed in furnishing materials for, or in the erecting and constructing such house or other building, before any other lien, which originated subsequent to the commencement of the said house or other building. The omission of the above words seems to be the most, if not the only, material difference between these two acts: and as the latter repealed the former, the change must be considered the result of design on the part of the legislature. And the only motive which can be discovered, that will account rationally for this change, would seem to be the one already suggested: and hence the words " by the owner or owners thereof" were left out

[Holdship v. Abercrombie.]

of the act of 1806, in order to make the house or building subject to the payment of the debts created in the erection and construction of it, whether contracted by the owner thereof, or any other person. But the house or building would be no security without the ground upon which it stands, with as much in addition thereto around it, as may be requisite to make it answer the purpose for which it was intended, because without this all the labor performed upon it would be of no value whatever; and part of the materials used in the construction thereof, would be wholly unfit for use, and of no value elsewhere; and the residue would be of much less value than before they were put into it. It has, however, been said, that the owner of the building, as mentioned in the act of 1803, was not intended to mean the owners of the ground, but had reference to the person who should cause the building to be erected; and that the ownership of the house or building, must therefore be considered as distinguishable from that of the ground upon which it is erected, and not necessarily including it. But it is manifest that such could not well have been the meaning of the legislature, for without the ground, the house or building would be, as must be apparent to every one, of little or no value; and consequently, would have afforded no security for the payment of the debts contracted in the constructing of it. It is impossible, therefore, to believe that the legislature, in speaking of the owner of the house or building, did not mean to include the owner of the ground upon which it should be erected; and to provide only for cases where the owners of the ground contracted the debts for building thereon. Besides, I take it, that this construction accords with the universal understanding of mankind on the subject, so far as common parlance can be made the test. For when we say, such a one owns that house, we mean also that he owns the ground whereon it stands, with all that is requisite for the proper use of it. This would also seem to agree with the prevailing notion, that the principal is of more value and importance, as regards the price of it, than the accessary; for generally the cost of the house or building greatly exceeds the price or value of the ground upon which it is erected: and, therefore, would seem to be regarded as the principal and the ground as appendant to it. Then according to this view, the house or building being considered the principal, it will attach to itself the ground upon which it is erected, as also whatever may be otherwise necessary for its occupation and use. This exposition of the act of 1806, is sustained by the case of Bickel v. James, 7 *Watts* 9. And that case, taken with Anshutz v. M'Clelland, 5 *Watts* 487, would seem to rule the present, and to support the decision of the court below. Under the act of the 28th of March 1808, when the owner of the house or building, that is, the person for whose use and benefit it has been erected, becomes indebted, either for the work done, or the materials used in the construction of it, upon contracts made by himself, the creditor or creditors wishing to pro-

[Holdship v. Abercrombie.]

ceed against the house or building, in order to obtain payment of their debts, may, after having filed their claims within due time, in the prothonotary's office of the county, sue out writs of *scire facias*, making the debtor, who is the owner of the building, in such cases the defendant: but where the contractor or debtor is not, the owner of the house or building, then the debtor and the owner ought both to be made defendants in the *scire facias*. M'Cullough must be considered the owner of the building here, and likewise the debtor; the proceeding, therefore, by *scire facias* against him alone was proper: and the sale made by the sheriff of the building, in pursuance thereof, such as under the acts of assembly, divested both the legal and equitable owners of the lot of ground, of all their right and title thereto.

Judgment affirmed.