## Leiby *versus* Wilson.

*Mechanics' Lien for building on Leasehold Property binds Estate of Lessor and Lessee.—Act of April 28th 1840, construed.*

1. In an action on a mechanics' lien, filed against a specified lot of ground and a house erected thereon, by a lessee under an improvement lease, whereby the house was to be paid for partly out of the profits of the lot, the plea "that the defendant holds no lands bound by the alleged lien" is not good, either as a plea or as a means of raising an issue of fact.

2. A contract, whereby the owner of land leases it for a term of years, the lessee stipulating to erect thereon a building, which is to be paid for in part by the lessor when completed and the balance out of the profits of the land, although as between the parties to it, an improvement lease, yet as to mechanics and material-men, it is a contract for the erection of the building: and the estate of the lessor is bound by a mechanic's lien for work done or materials furnished for the erection of the building.

3. The Act of 28th April 1840, providing "that the lien shall affect only the estate of the person in possession, at the time of the commencement of the building, and at whose instance the same was erected," does not apply to improvements by a lessor which are stipulated for by the lessee in the lease; it was framed to prevent the estates of remainder-men, lessors, and vendors by articles of agreement, from being swept away by liens filed for the erection of buildings in the contract for which they had no part.

ERROR to the Common Pleas of *Cumberland county.*

This was a *scire facias* sur mechanic's lien, by Robert Wilson and George W. Wilson, partners, doing business as R. Wilson & Son, against Jacob Leiby, as owner, and Isaac Blizzard, contractor. An appearance was entered for Leiby, but judgment for default of appearance was entered against Blizzard, the contractor, who, it seems, was not served.

The building against which the lien was filed, was erected under articles of agreement, dated February, 1857, between Isaac Blizzard, as agent for Robert Wilson and Jacob Leiby, which are set out at length in Woodward *v.* Leiby *et al.,* 12 Casey 437, and therefore need not be repeated here.

The building was a two story warehouse erected on a lot conveyed by Vanderbilt to Leiby, by deed acknowledged November 21st 1856, and duly recorded. By the agreement above mentioned, this lot was leased by Leiby to Blizzard, for five years, in consideration whereof, Blizzard was to build and finish this storehouse, &c.

On an execution against Blizzard at the suit of Wilson and others, in which the mechanic's lien debt was included, defendant's interest in this lease was sold by the sheriff, February 26th 1858, to one William Blizzard, for $50, by whom it was sold to Leiby for $300, April 2d 1858.

The defendant Leiby pleaded that he held no lands bound by the alleged lien sued upon, and on the issue thus made up, the case was tried.

On the trial the defendant's counsel requested the court to charge the jury—

1. That Jacob Leiby's estate under the facts in evidence in this case, was not bound by the lien of the mechanic sued upon.

2. If Wilson obtained a judgment against Blizzard for the amount of his claim, and issued a *fi. fa.* upon it, and levied upon the leasehold estate of Blizzard and sold it, and had the proceeds applied to his execution, it is a bar to his recovery in this case.

3. That the sale on *fi. fa.* No. 12, April Term 1858, was for a sum sufficient to pay the amount of the plaintiff Wilson's claim— the other creditor (Mumma) being entitled to no part of it—his was but a judgment of indemnity.

Which the court below (GRAHAM, P. J.) answered as follows :—

"1. We cannot answer this point as requested. The Supreme Court, when this case was before them, said the contract between Leiby and Blizzard ought to be regarded as a building contract rather than a lease, consequently Leiby's estate in the premises would be bound by the mechanic's lien filed.

"2. We cannot answer this affirmatively. Obtaining a judgment against Blizzard, and levying and selling his interest in the premises, would not prevent a proceeding on the lien filed, and a sale of the interest of Leiby, the owner in fee.

"3. This *fi. fa.* was on a judgment against Blizzard in name of Robert Wilson, for himself, and in trust for Jacob Mumma, for $1740. Of this sum $334 is stated to be a debt due to Robert Wilson, and admitted to be the same for which the mechanic's lien was filed; and also a debt due to Jacob Mumma for money advanced, and to cover certain liabilities upon which Mumma is the security of Blizzard. The judgment is absolute upon its face for $1740, and the consideration is mentioned as a debt due to Jacob Mumma for money advanced and liabilities incurred by Mumma as security of Blizzard. Under this state of facts we cannot say that Mumma was entitled to no part of the money made on the *fi. fa.* The judgment on its face is a valid judgment for $1740. And if any creditor of Blizzard or Jacob Leiby, who was interested in having Wilson paid out of the sale on the *fi. fa.* to relieve Leiby's property from the mechanic's lien, had desired the consideration mentioned, they could have applied to the court and had the validity of the debt recited as due to Mumma by Blizzard, investigated.

"But the honesty of the judgment cannot thus be inquired into collaterally, in an issue between different parties.

"The money made on the *fi. fa.* No. 12, April Term 1858, ought to be pro-rated to Wilson and Mumma according to the respective sums due them on the judgment. After crediting the amount Wilson would thus receive out of the sheriff's sale, the

[Leiby v. Wilson.]

counsel for the parties admit there would remain due to Wilson, the plaintiff, on his lien filed, $289.35, for which sum he is entitled to your verdict."

Under these instructions there was a verdict and judgment in favour of plaintiff for $289.35, whereupon the defendant sued out this writ, and assigned for error here:

1. The entering a judgment against Blizzard, one of the defendants, upon whom no process had been served and for whom there was no appearance.

2. The refusing to answer the defendant's first point as requested.

3. The refusing to answer the defendant's second point affirmatively.

4. The answer to the defendant's third point saying that the judgment, No. 116, January Term 1858, Robert Wilson v. Isaac Blizzard, is absolute on its face, and entitled to the proceeds of the sale made upon the *fi. fa.* No. 12, April 1858.

5. The instructing the jury as follows: "The money made on the *fi. fa.*, No. 12, April Term 1858, ought to be pro-rated to Wilson and Mumma according to the respective sums due to them on the judgment." The mechanics' lien would have been entitled to the whole amount for which the lease was sold, because it was the first lien upon it.

*Watts* and *Parker*, for plaintiff in error.—The contract which is the foundation of the alleged lien, was by Isaac Blizzard, acting as agent of Robert Wilson and Jacob Leiby, one of the stipulations of which provides for the protection of Leiby against mechanics' liens, and yet this same Robert Wilson, with his son George Wilson, enters this claim and prosecutes it as a mechanic's lien. And the judgment of Wilson and Mumma is against Blizzard as a trustee for his family under this same agreement with Wilson as his principal.

This judgment cannot be affirmed without the reversal of principles plainly stated by text writers on the subject of the construction of the Mechanics' Lien Law, and the repeated decisions of our own court affirming these principles.

Upon the execution of the agreement of February 1857, Blizzard, as a lessee, came into possession of a chattel real, whilst Leiby remained the owner of the fee. The Act of the 28th April 1840, provides expressly that " the lien shall not be construed to extend to *any other* or *greater estate* in the ground on which any building may be erected than that of the person or persons *in possession* at the time of commencing the said building, *and* at whose instance the same was erected." The contract between Leiby and Blizzard affected no man but the parties to it; nor was any man entitled to give it any construc-

4 Wr.—5

[Leiby *v.* Wilson.]

tion or effect other than the parties gave to it. As between
Leiby and Blizzard, the former parted with his possession, and
the latter assumed it as a tenant for five years ; and it will be
observed, that it is the *possession* of the party that characterizes
the estate to be bound by the lien: Hayworth *v.* Wallace, 2 Harris
120, decides that a chattel real is not the subject of a mechanic's
lien at all. So also is Church *v.* Griffith, 9 Barr 117, and White's
Appeal, 10 Id. 254; Sergeant's Lien Law 160–62. It was
upon the faith of the law thus settled by our own court, giving
a construction to our own statute, that this contract was advisedly
entered into.

Whether the contract between the parties be considered in its
nature a building contract or not; whether the rent was payable
wholly or partly by buildings; it cannot ignore the fact that
Leiby was a landlord, Blizzard a tenant—the one was seised of
the fee, the other possessed of a chattel real; and that the
statute in express terms limits the lien to the estate of the person
*in possession.* Blizzard was in possession and had been so exclu-
sively, for more than a year before the lien was filed. Leiby
was not in possession either in law or fact. Blizzard being thus
in possession, it was notice to all persons dealing with him, that
his title alone, was to be looked to as security ; if such persons
looked further than the possession, they were not warranted by
the statute in so doing, and the contract itself informed them,
if they looked to it, that neither Leiby nor his estate was to be
responsible.

*John Williamson* and *William M. Penrose*, for defendants in
error.—1. This is a proceeding *in rem*, and the judgment on the
verdict against Leiby, the owner, is separate from and in-
dependent of the judgment by default against Blizzard, the con-
tractor. Whether the judgment against the latter be good
or bad, it does not affect the validity of the judgment against
the former.

2. Defendant's first point depends on the building agreement
between J. Leiby and I. Blizzard, of the      day of February
1857; and the court below ruled the point, on the ground that
this court had decided that it was a building contract, and that
mechanics' liens filed for work done, &c., about the erection of
the building on the premises bound the estate of Jacob Leiby
therein: Woodward *v.* Leiby, 12 Casey 437.

3. The 27th section of the Act of 16th June, 1836, in relation
to mechanics' liens, expressly provides that the debt for which
the mechanic's lien is filed, &c., may be sued for in a *personal*
action and recovered against the owner or any other person.

In this case the *lien* and the *right to the personal action* were
securities for the same debt; and the *scire facias* and the per-

[Leiby *v.* Wilson.]

sonal action are concurrent remedies for the recovery of the same debt; and both remedies continue in force till full satisfaction of the whole debt. Here the judgment and execution in the personal action was against Blizzard, the contractor; and all that was sold by virtue of such execution was *his leasehold* interest in the premises, leaving untouched the reversionary estate of Leiby, the owner, bound by the lien.

4th and 5th specifications of error are fully answered by the court below, in their answer to defendant's third point.

The opinion of the court was delivered, July 24th 1861, by

LOWRIE, C. J.—It is not very good pleading to a claim of a mechanic's lien against a specified house and lot, to plead that the defendant "holds no lands bound by the alleged lien;" but, on carefully studying the case, it is apparent that the plea means to aver that only the leasehold of Blizzard, and not the title of the lessor, was bound by the lien. Even this is very defective as a means of raising an issue of fact; but it is all we have. It is the very same issue that we had before in Woodward *v.* Leiby, 12 Casey 437; and the present case raises no other issue of any importance.

We still think we were right in our former decision. True, the Act of 28th April 1840, declares that the lien shall affect only the estate "of the person in possession at the time of the commencement of the building, and at whose instance the same is erected." But if we were to interpret this very strictly, we should soon have the whole lien law frustrated. A lease for three or six months to a builder and possession under it, with a contract to build a house on the lot for the owner, would be exactly a case for no lien at all; for the builder would be in possession without the house being erected at his instance, and the owner would have had it erected without being in possession. This interpretation will not do.

It was not for such a case as this that the act was framed, but to correct the mischief developed in several cases (2 Rawle 343, 7 Watts 9, 9 Id. 52), of allowing the lien to sweep away by articles of agreement the estates of remainder-men, lessors and vendors, who had had no part in the contract for the erection of the building.

Judgment affirmed.