# Meanor, Appellant, *v.* Goldsmith.

216    489
41SC¹200

*Boroughs—Sidewalk—Lien—Paving—Life tenant—Remainder-man.*

As between a life tenant and the remainder-man, it is the duty of the former to lay a pavement on the sidewalk in front of the lot in the boroughs of this state. If the life tenant fails to do so, and the borough makes the improvement, and files a lien therefor, the lien binds the life estate only, and a sale under it will not affect the estate of the remainder-man. The life tenant is the "owner" within the meaning of the General Borough Act of April 3, 1851, P. L. 320.

A borough cannot enforce a lien for paving a sidewalk, unless there has been a previous demand on the owner to do the paving and a refusal on his part. Such notice should clearly and plainly be made to appear, and not be left to inference.

Where no notice to pave has been served upon the remainder-men, and they have not been served with the scire facias issued on the lien, the judgment on the lien may be collaterally attacked by them in an ejectment brought by the remainder-men against purchasers of the property at a sale under the judgment.

Argued Oct. 25, 1906. Appeal, No. 70, Oct. T., 1906, by plaintiffs, from judgment of C. P. No. 3, Allegheny Co., May Term, 1903, No. 158, on verdict for defendants in case of S. J. Meanor et al. v. Mary A. Goldsmith, Owner, and Mary Meyers, Tenant. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Ejectment for a lot in the borough of Tarentum. Before McCLUNG, P. J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendants.

*Error assigned* was in giving binding instructions for defendants.

*John A. Metz* and *Ernest C. Irwin,* for appellant.—The proceeding to recover the expenses of laying a sidewalk in default of the owner to pay, is not an action strictly in rem, but has a personal aspect as well, differing in this regard from the lien filed to recover for street pavement: McKeesport Boro. v. Fidler, 147 Pa. 532 ; Greensburg Borough v. Young, 53 Pa. 280 ; Pittsburg v. Daly, 5 Pa. Superior Ct. 528 ; Oliver

Cemetery Co. v. Philadelphia, 93 Pa. 129 ; Erie v. Church, 105 Pa. 278 ; Philadelphia v. Pennsylvania Hospital, 143 Pa. 367 ; Wilkinsburg Boro. v. Home for Aged Women, 131 Pa. 109 ; Wistar v. City of Philadelphia, 86 Pa. 215 ; Emrick v. Dicken, 92 Pa. 78 ; Bryan's Appeal, 101 Pa. 389 ; Salter v. Reed, 15 Pa. 260.

A municipal claim for paving a sidewalk must be borne by the life tenant: Hitner v. Ege, 23 Pa. 305 ; Sands's Est., 43 Pittsburg Legal Jour. 472 ; McDonald v. Heylin, 4 Phila. 73.

The sale on a lien filed for expenses incurred in paving a sidewalk along land in which there is a life estate passes only the estate of the life tenant : Pottsville Lumber Co. v. Wells, 157 Pa. 5 ; Kelso v. Kelly, 14 Pa. 204 ; Nashville v. Cowan, 78 Tenn. 209 ; Blackwell v. West Amwell Twp., 43 N. J. L. 165 ; McDonald v. Hannah, 59 Fed. Repr. 977 ; Morrow v. Dows, 28 N. J. Eq. 459 ; Kile v. Fleming, 78 Ga. 1 ; Gates v. Lawson, 32 Grat. (Va.) 12 ; Stovall v. Austin, 84 Tenn. 700.

Notice to both life tenant and remainder-man was necessary : West Chester v. Sahler, 8 Pa. C. C. Rep. 656.

*Nelson McVicar*, with him *Richard A. Kennedy*, for appellee.—We contend that the judgment in this case should be affirmed, for the following reasons :

1. That a tenant in remainder in conjunction with the life tenant, is required, under the general borough act of 1851, and according to its general regulations, to construct a sidewalk in front of their property. That a borough, after default of the owners, may construct the walk, file a lien, reduce the same to judgment and sell the property.

2. That the judgment and title acquired at sheriff's sale on an execution which is based on a scire facias sur municipal claim, for the debt incurred in the construction of a sidewalk by a borough, in pursuance of the power conferred by the act of 1851, is a judgment in rem and cannot be collaterally attacked : Pittsburg v. Daly, 5 Pa. Superior Ct. 528 ; Philadelphia v. Peyton, 25 Pa. Superior Ct. 350 ; Hartman v. Ogborn, 54 Pa. 120.

Opinion by Mr. Justice Mestrezat, January 7, 1907 :

This is an action of ejectment to recover possession of a lot of ground in the borough of Tarentum in Allegheny county.

Ann Meanor died in August, 1870, seized and possessed of the property in controversy, and leaving to survive her as her heirs at law, the plaintiffs in this case and a husband, Samuel Meanor, since dead. On a judgment obtained against Samuel Meanor, his life estate in the property was sold and conveyed by the sheriff to James Kennedy, who thus became tenant pur autre vie of the premises.

During the tenancy of Kennedy, the borough of Tarentum laid a pavement on the footwalk in front of the premises. To collect the expenses thus incurred, the borough filed a lien in the common pleas of Allegheny county on January 12, 1900, against the lot of ground for which this action was brought. The lien set forth a description of the lot, and the amount of the claim and penalty, $42.19, " the sum aforesaid being a debt due the borough of Tarentum by James Kennedy, Sr., Samuel Meanor, Ann Meanor's heirs and others unknown, owners and reputed owners, for work done and material furnished (with twenty per cent advance thereon, within thirty days last past, in and about the construction) grading, paving, curbing and guttering of a certain side or footwalk along said described property . . . . said work having been done and material furnished by said borough upon the failure of said James Kennedy et al. to do the same, and after due and regular notice to them so to do, as provided in the borough ordinance of February 25, 1898, . . . . the said James Kennedy and others as aforesaid being the actual or reputed owner and Isaac Johns being the occupier of said premises." A scire facias was issued on the lien, January 12, 1900, to which the sheriff returned that he had served James Kennedy, Sr., and John B. Meanor and Isaac Johns by leaving a copy of the writ at their respective residences, and nihil habet as to Samuel Meanor and other defendants. An alias scire facias was issued to which the sheriff returned that he had served the writ on John Meanor and James Kennedy, Sr., by leaving a copy at their respective residences, and on Isaac Johns, occupier of the premises described in the writ, in the same manner, and by affixing a copy of the writ upon the door of the premises; and that he had served the writ upon Samuel Meanor, Ann Meanor's heirs and others unknown, owners or reputed owners, by publication. Judgment was

entered " against the defendants " in default of appearance and affidavit of defense, sec. reg. on April 19, 1900, a levari facias was issued thereon and the property was sold by the sheriff for $100 to James M. Smith who conveyed it to Mary A. Goldsmith, one of the present defendants.

This is a suit by the remainder-men, who are the heirs of Ann Meanor, deceased, to recover the premises sold and conveyed under the proceedings on the lien filed by the borough. The plaintiffs' contention is that the claim for constructing the pavement on the footwalk is a personal debt of the life tenant, that the lien filed against the premises was to enforce payment of that debt and was not a proceeding strictly in rem, binding the interests of the remainder-men in the property, and hence the lien bound only the life interest of Samuel Meanor, and the sale on the judgment recovered on the lien sold only the estate of the life tenant in the premises.    The life tenant having died, it is claimed that the remainder-men, the plaintiffs, are entitled to the possession of the lot.

The defendants contend that under the general borough Act of April 3, 1851, P. L. 320, the remainder-men as well as the life tenants were required to construct the pavement in front of the property, that the lien filed by the borough was a proceeding in rem and bound all the estates or interests in the property, that a sale on the scire facias issued on the judgment obtained on the lien conveyed all interests in the property to the purchaser, and that the judgment cannot be attacked collaterally in this action.

The court below being of opinion " that the record seems to show title in the defendant," directed a verdict for the defendants upon which judgment was entered.    The plaintiffs have taken this appeal.

The proceedings in this case resulting in a judgment and sale of the premises were taken under the general borough Act of April 3, 1851, P. L. 320, 1 Stewart's Purdon, 494.    Section 2 of the act provides, inter alia, that every borough shall have power : " to require and direct the grading, curbing, paving and guttering of the side or footwalks by the owner or owners of the lots of ground respectively fronting thereon, in accordance with the general regulations prescribed ; (and) to cause the same to be done on failure of the owners thereof, within

the time prescribed by the general regulations, and to collect the cost of the work and materials, with twenty per centum advanced thereon from said owners, as claims are by law recoverable under the provisions of the law relative to mechanics' liens; and . . . . the name or names of the actual or reputed owner or owners, as also of the occupier or occupiers of the premises for the time being, shall be set forth in a statement to be filed within thirty days after such expense shall have been incurred."

There can be no question of the authority of the borough under the act of 1851 to pave a sidewalk on failure of the owner of the premises to do so, and collect the expense from him in the manner directed by the statute. The language of the act is that the borough may require the paving of the sidewalk " by the owner or owners of the lots of ground respectively fronting thereon," and " cause the same to be done on failure of the owners thereof . . . . and collect the cost of work and materials . . . . from said owners." We have held that the duty of laying a pavement on a sidewalk is imposed directly on the property owner; that an ordinance requiring the owner to lay such pavement is a police regulation; and that the amount expended in enforcing the ordinance is not a tax or a municipal assessment in the nature of a tax: Wilkinsburg Borough v. Home for Aged Women, 131 Pa. 109; Mt. Pleasant Boro. v. B. & O. R. R. Co., 138 Pa. 365; Phila v. Penna. Hospital, 143 Pa. 367. On the other hand, we have ruled that an assessment for the construction of a sewer or for paving the roadway of a street in front of a lot is a species of local taxation: Oliver Cemetery Co. v. Phila., 93 Pa. 129; Erie v. First Universalist Church, 105 Pa. 278; McKeesport Boro. v. Fidler, 147 Pa. 532.

In the case of a sidewalk, therefore, the claim is simply a personal obligation imposed on the owner of the premises by a police regulation for which, prior to the special remedy provided by the act of 1851, an action at common law would lie, and is not a debt for which the land is in the first instance liable. But the claim for constructing a sewer or paving the roadway is in the nature of a tax for which the land itself is debtor and the collection of which could not be enforced by a suit at common law. Keeping in view these important dis-

tinctions between the claims in the two classes of cases, we may more readily understand the difference in the effect of a sale of the premises in a statutory proceeding to enforce their collection.

As between the life tenant and the remainder-man, this court has determined it to be the duty of the former to lay a pavement on the sidewalk in front of a lot in the boroughs of this state. That question was raised and decided in 1854 in Hitner v. Ege, 23 Pa. 305, and is no longer open to discussion. In the opinion delivered by LEWIS, J., reversing the trial court, it is said (p. 307): "By the borough ordinance it is made the duty of the 'owner or occupier' to 'pave the sidewalk, with brick, within three months' after the enactment. This duty may be enforced by a penalty. As Ege, the tenant, was thus bound to pave the sidewalk, it was not necessary that he should await the pleasure of his landlord in this respect. As a tenant from year to year, his term was too brief to justify the court in charging him with the expense of the improvement, while the temporary character of the work, requiring repeated renewals during a lifetime, indicated the injustice of charging it upon the remainder-men or the reversioners. Such a structure is properly chargeable upon the tenant for life."

The person, therefore, who was liable in the case at bar for the expense of laying the pavement on the sidewalk was the life tenant, Meanor, or Kennedy who held Meanor's life estate in the premises. He was the "owner" of the lot in contemplation of the act of 1851, whose duty it was to lay the pavement. In the absence of the statutory provision for enforcing payment of the claim, the borough could have brought a personal action against the life tenant, and recovered a general judgment which would have been a lien on all his real estate, and for which it could have been sold on an appropriate execution. The remainder-men, on the other hand, were not liable personally for the debt, nor could their estates in the premises have been subjected in any way to the claim for laying the pavement.

But it is contended by the defendants, and this is the pinch of the case, that the estate of the remainder-men in the liened premises is made liable for the expenses of paving the walk by the provision of section 2 of the act of 1851, which provides

that the borough may collect the claim " from said owners, as claims are by law recoverable under the provisions of the law relative to mechanics' liens." But is that position tenable in view of the fact that the claim is a personal obligation of the life tenant and for which he alone was liable in a personal action prior to the remedy prescribed by the act of 1851? Does this provision of the act create a lien on the estate of the remainder-men, or a liability on their part for the debt of the life tenant, and also give a remedy to enforce the lien and liability against the estates of the remainder-men in the premises abutting the improvement?

The mechanic's lien Act of June 16, 1836, P. L. 695, creates a lien as well as provides a remedy for enforcing it against the building and ground covered by the building and appurtenant thereto for debts contracted for work done and materials furnished for the structure. A lien is a hold or claim which one person has upon the property of another as a security for some debt or charge : 2 Bouv. L. Dict. 226. The effect of the act of 1836, and prior legislation on the subject, was to make the claim a charge upon and payable out of the land itself. The land as well as the title of all persons in the land, whether leasehold, freehold, or in fee, were bound by a mechanic's lien : Savoy v. Jones, 2 Rawle, 343 ; Bickel v. James, 7 Watts, 9 ; Holdship v. Abercrombie, 9 Watts, 52 ; Leiby v. Wilson, 40 Pa. 63 ; Waters v. Wolf, 162 Pa. 153. But in 1840 the legislature, believing that the construction put upon the act of 1836 which supplied all previous legislation on the subject worked injustice, enacted that " the lien created by the act . . . . shall not be construed to any other or greater estate in the ground on which any building may be erected than that of the person or persons in possession, at the time of commencing the said building, and at whose instance the same is erected ; nor shall any other or greater estate than that above described be sold by virtue of any execution authorized or directed in the said act : " Act of April 28, 1840, section 24, P. L. 467, 2 Purd. 1309. In speaking of this act in Leiby v. Wilson, 40 Pa. 63, Lowrie, C. J., said : " It was not for such a case as this (lessee under an improvement lease) that the act was framed, but to correct the mischief developed in several cases (2 Rawle, 343, 7 Watts, 9, 9 Watts, 52), of allowing the lien to sweep away by

articles of agreement the estates of remainder-men, lessors, and vendors, who had had no part in the contract for the erection of the buildings." And in Waters v. Wolf, 162 Pa. 153, DEAN, J., delivering the opinion says (p. 167) : " So whatever may be the logical deductions from some of the decisions which, prior to the act of 1840, held the entire estate bound by the lien, the weight of authority is, that, without violence to settled legal principles, a debt without a contract cannot be created against the owners. If it be conceded that, by mere legislative fiat, an indebtedness by one man to another may be established independent of contract, it necessarily follows that the legislature may prohibit the debtor from relieving his property by contract from the lien of such indebtedness."

If the claim of the borough in this case had been for work done or materials furnished to the life tenant in the construction of a building on the premises, it is apparent that without a contract with them no lien would lie against the estates of the remainder-men in the lot of ground, as they were not in possession, and their estates could not have been sold on an execution issued on a judgment recovered on the lien. Unless, therefore, a lien filed to enforce a claim against the life tenant for paving a sidewalk is to be extended so as to subject other estates than those bound by mechanics' liens, the lien in this case would not subject the estates of the remainder-men to payment of the borough's claim for paving the sidewalk in front of the premises sold on this lien. Here, the remainder-men were not in possession of the lot and had no right to the possession at the time the improvement was made.

There is and can be no sufficient reason assigned for extending a lien for paving a sidewalk beyond that of a mechanic's lien, and for holding that the estates of the remainder-men in the property liened can be subjected to the payment of the claim. As we have seen, the duty to pave was on the life tenant. He was in possession of the premises and was required to make the improvement. He was the "owner" in contemplation of the act of 1851, as held by this court, who was required to pave the walk on request of the borough authorities. The act gives no authority to the borough to require the paving to be done by the remainder-men, for the reason, first, that it is the duty of the life tenant to pave, and,

second, that the remainder-men were not in possession and had no right to the possession of the premises, and hence could not have done the paving if required by the borough. When the act of 1851 was passed, authorizing boroughs to require the owners of lots to pave sidewalks, it must be assumed that the legislature knew of the act of 1840 restricting a mechanic's lien to the estate of the party in possession of the premises. It was therefore manifestly intended by the act of 1851 to give the borough the authority to require the owner in actual or constructive possession to lay the pavement on the footwalk, and on his refusal to do so, to enforce payment of the expenses by a lien and proceedings thereon against his estate, as provided in the mechanic's lien law. The provision of the act of 1851 providing the procedure for enforcing a claim for paving a footwalk did not create a lien or an indebtedness for the improvement against the remainder-men or any other owner of an interest in the premises, but simply provided a remedy against the life tenant's interest in the premises, in the language of the act itself, " to collect the cost of the work and materials . . . . from said owners." In fact, if we hold that remainder-men can be required to make such an improvement, and thereby perform the duty and assume the liability of the life tenant, we are confronted with the absurd proposition that they can be legally required to do something—enter upon the premises and pave—when they are not in possession of the premises, and would be trespassers if they entered to do the work. And, further, it would be recognizing as sound the principle, condemned in Waters v. Wolf, 162 Pa. 153, that the legislature has the power to compel one man to pay the indebtedness of another without a contract, express or implied, on the part of the former. Such an interpretation of the act of 1851 clearly discloses its own refutation.

There was no evidence in the case, aside from the lien itself, that the remainder-men were notified or required to pave the sidewalk and declined to do so. A demand and refusal are essential to sustain a claim under the act of 1851; and the borough has no right to collect either the cost or the penalty without a previous demand and refusal: Mt. Pleasant Borough v. B. &. O. R. R. Co., 138 Pa. 365. We do not think the lien avers notice to the remainder-men. It alleges that

the claim was filed for $42.19, " being a debt due the borough of Tarentum by said James Kennedy, Sr., Samuel Meanor, Ann Meanor's heirs and others unknown, owners and reputed owners." It then avers that the paving was done " upon the failure of said James Kennedy et al., to do the same, and after due and regular notice to them so to do." This is wholly insufficient as an averment of notice to the remainder-men. We are asked to infer that the words " et al." refer to Ann Meanor's heirs. But whether they mean "and another " or " and others " is indeterminable, and if either, whether they refer to other persons who have been named in the preceding part of the lien, or to persons other than those named therein. It is simply a guess as to the persons who were intended by these words in the averment. As the right to file a lien and the consequent right to take property and apply it to the payment of the debt depend upon notice to the parties sought to be charged, it follows that such notice should clearly and plainly be made to appear and not be left to inference. While it has been held that notice need not be averred in the statement or lien, yet we have distinctly ruled that notice to the owner is a prerequisite to the validity of a lien for paving a sidewalk. It is therefore essential that the borough show unequivocally and certainly that notice to pave was given the owner before it is in a position to compel him to pay for the improvement by the special remedy provided by the act of 1851. Here, the lien itself as well as the record of the trial of the scire facias issued on the lien failed to show any notice to the remainder-men to pave the footwalk, and hence the lien as to them is of no validity and is void.

It is further claimed by the defendants that the lien and judgment thereon cannot be attacked collaterally in this action. But it is difficult to see that any judgment was entered or could be entered against the remainder-men on the scire facias. The judgment, as noted above, was entered against James Kennedy, Sr., Samuel Meanor, and Ann Meanor's heirs. The remainder-men are alleged to be the heirs of Ann Meanor, deceased, but their names do not appear in any of the proceedings from the filing of the lien to the deed to the sheriff's grantee. And none of them was served with notice to lay the pavement or was made a party to or served with

the scire facias or alias scire facias issued on the lien. A judgment was very properly entered against Kennedy, who owned the life estate, as he had due notice of every step throughout the entire proceedings. Upon the judgment against the life tenant, his interest in the real estate could properly be sold. The proceeding on the claim was, as we have seen, to enforce a personal debt due the borough from him and not from the remainder-men. If they had been duly notified and had refused, and a judgment had been obtained against them upon a scire facias duly served, there would be some grounds for the defendants' contention that they were concluded by the judgment and sheriff's sale of the premises. Or if this was strictly a proceeding in rem for paving the roadway or the like and the claim was a lien on the lot itself, it might well be that the judgment, obtained upon a constructive service of the sci. fa., would be sufficient to authorize a sale of the property. But here, there was no notice to the remainder-men to pave the walk and no service of the sci. fa. on the remainder-men. To permit a judgment to stand and be the basis of the sale of the defendants' real estate under such circumstances, would be to deprive a party of his property without due process of law. By failure to serve the remainder-men, the court could acquire no jurisdiction over them, and hence a judgment entered against them would be void. Although this was a statutory proceeding to make the owner's real estate liable for a debt, it was simply for the purpose of enforcing a claim due from him to the borough, and not a debt imposed upon the land which was sold on the lien. This distinction, as suggested above, is material in determining the validity of the sale upon which it is claimed the interests of the remainder-men in the property were sold.

We have not overlooked the sheriff's return to the scire facias which shows that a copy of the writ was left at the residence of John B. Meanor, nor the return to the alias scire facias which shows a similar service of the writ on John Meanor. But there is nothing in the case whatever showing that either of these men, if different individuals, was a remainder-man, or that either of them was J. B. Meanor, a remainder-man and one of the plaintiffs in this action. Hence, there is nothing in this record to show that J. B. Meanor, one of the heirs of

Ann Meanor, deceased, and a plaintiff here, was notified to lay the pavement on the footwalk or was served with any writ of scire facias issued on the lien filed against the property. The record shows that no judgment was entered against J. B. Meanor on the scire facias issued on the lien. These facts make it apparent that his interest in the property was not subjected to the lien by the borough, nor bound by the judgment on which the property was sold.

For the reasons above stated, we are of opinion that the lien filed by the borough to enforce the payment of the claim for paving the sidewalk in question was without validity as to the heirs of Ann Meanor, deceased, the remainder-men; that the judgment thereon was not entered against them and did not bind their interests or estates in the land; and that the sale and conveyance by the sheriff on the judgment did not sell or convey their interests or estates in the land to the purchaser. It follows that the learned trial judge erred in directing a verdict for the defendants in this action, and that under all the evidence in the case the verdict should have been for the plaintiffs.

The judgment is reversed, and judgment is now entered for the plaintiffs and against the defendants for that part of the premises described in the writ to which no disclaimer was entered by defendants, with six cents damages and costs.