## Egan, Escheator, v. Innes et al.

*James Herbert Egan*, for plaintiff.
*Elgin H. Lenhardt* and *William F. Dannehower, Jr.*, for defendants.

KNIGHT, J., July 18, 1928.—In the above case the parties have filed an agreement that the case be tried before a judge of this court under the act of assembly in such case made and provided.

Counsel have agreed in writing upon a statement of facts which has been filed of record and from which we state the following essential facts:

Samuel Innes was seized during his lifetime of a certain frame messuage and five lots or pieces of land, situate in the Borough of Bridgeport, Montgomery County and State of Pennsylvania, and more particularly described in deed from Henry S. Sanvill and Isadore Sanvill, his wife, to Samuel Innes, dated April 3, 1893, and recorded in the office for the Recording of Deeds in and for the County of Montgomery, in Deed Book No. 379, page 413.

Samuel Innes, being seized of the above-mentioned real estate, died on Aug. 19, 1900, having first made his last will and testament, which was duly probated in the office of the Register of Wills of Montgomery County, and remaining of record therein, in Will Book No. ——, page ——, wherein he provided, *inter alia*, as follows:

"I also give and devise unto my wife (Mary E. Innes) for and during all the term of her natural life, all my real estate wheresoever situate, she to pay the taxes thereon and keep the same in good repair. Upon the decease of my said wife, I direct my Executor, hereinafter named, to sell all my real estate at public or private sale at such time and for such prices as he shall deem good and sufficient and to that end I hereby authorize and empower him to make, execute and deliver all such deeds of conveyance as shall be necessary and requisite to grant, convey and assure the same to the purchasers in fee simple the same as I could do if living without any liability on the part of the purchasers to look to the proper application of the purchase money. The money arising from the sale of my said real estate, after deducting all necessary costs and expenses, I give and bequeath unto my heirs at law in such proportions and shares as they would be entitled to under the laws of the Commonwealth of Pennsylvania had I died intestate."

John C. Snyder was appointed executor in the will of Samuel Innes, and died on Nov. 25, 1906, whereupon letters *d. b. n. c. t. a.* were granted on Nov. 27, 1927, in the estate of Samuel Innes, deceased, to Mary E. Innes.

Mary E. Innes died Oct. 11, 1921, having no known heirs or kindred.

James Herbert Egan, Esq., was appointed escheator of the estate of Mary E. Innes on Sept. 28, 1923.

In an action started as of No. 20, June Term, 1904, the Borough of Bridgeport filed a lien against the premises described above in the amount of $133.68 for curbing the street in front of the premises. This lien was filed against Mary Innes, widow of Samuel Innes, deceased, Hugh Innes, Harry Innes, Margaret Cunning and William Innes, heirs-at-law of Samuel Innes, deceased, and John C. Snyder, executor of Samuel Innes, deceased, owners and reputed owners. Said lien was indexed in Lien Docket No. 17, page 308.

A *scire facias* was issued as of No. 115, March Term, 1905, on March 4, 1905, and properly served on all the above parties. On April 11, 1905, judgment was entered against the defendants for want of an appearance and affidavit of defense, and damages were assessed in the sum of $133.68, which judgment was transferred to Judgment Docket G-2, page 441.

A writ of *levari facias* was issued on said judgment on May 1, 1905, as of No. 34, June Term, 1905, which proceedings are entered in Execution Docket No. 25, page 321.

On June 7, 1905, Edgar Matthews, Esq., High Sheriff of Montgomery County, sold the above-described real estate to Mary E. Innes for $200, and on June 17, 1905, a sheriff's deed poll was acknowledged in open court and recorded in Sheriff's Deed Book "S," page 405.

By said deed the above-described property was sold by Edgar Matthews, High Sheriff, to Mary E. Innes, her heirs and assigns, for $200.

On Jan. 4, 1918, Mary Innes, as administratrix *d. b. n. c. t. a.* of Samuel Innes, petitioned the Orphans' Court for leave to mortgage said real estate for the sum of $800, which leave was granted and a mortgage executed by Mary E. Innes, as administratrix *d. b. n. c. t. a.* of Samuel Innes, to Eliza Davis and recorded in Mortgage Book No. 724, page 249.

Mary E. Innes died on Oct. 11, 1921, and subsequent to her death Robert Innes was appointed administrator *d. b. n. c. t. a.* of the estate of Samuel Innes.

On April 8, 1922, the premises were exposed at public sale (by whom and upon what authority is not stated) and were knocked down to Paul Di Giacomo and Teresa, his wife, for the sum of $2505. Settlement was to be made in sixty days.

The purchasers applied for title insurance to the Penn Trust Company of Norristown, Pennsylvania, which company, in examining the title, discovered the deed from the Sheriff of Montgomery County to Mary E. Innes, and placed the same as an objection in its settlement certificate. All parties then agreed that the alleged purchasers should take possession of the property and occupy the same while the deed executed by Robert Innes, administrator *d. b. n. c. t. a.* of the estate of Samuel Innes, together with the purchase money, should remain is escrow with the Penn Trust Company until the question of title was determined.

As of the above term and number, James Herbert Egan, Esq., escheator of the Commonwealth of Pennsylvania in the estate of Mary E. Innes, deceased, brought this action of ejectment against the above-named defendants.

## Discussion.

The solution of the interesting and rather difficult problem presented in the above statement of facts lies in the answer to the following question: Did the sheriff's deed to Mary E. Innes vest in her title in fee simple free from any trust in favor of the defendants or the heirs of Samuel Innes?

The Borough of Bridgeport was incorporated by Special Act of Assembly approved Feb. 27, 1851, P. L. 115. Section 18 of this act provides, *inter alia,* that the burgess and town council shall have full power to pave and curb, or caused to be paved and curbed, the footways and gutters in said borough and charge the properties fronting such footways with the expense of such curbing and paving: Provided, that every owner of ground shall have the privilege of curbing and paving within ninety days after notice in writing so to do.

Section 19 of the same act authorizes the borough to collect the charges for paving and curbing by suit against the owners of the land, and, in addition, to better secure the borough, "every lot or piece of land in said borough shall be subject to a lien for all expenses for work done and material used in and about the curbing—paving of the sidewalks opposite said lot or piece of land, which shall be preferred to every other lien or encumbrance on such lot or piece of land."

This lien continues for nine months after completion of the work, but then expires unless a claim is filed in the prothonotary's office.

In the present case the claim was filed before the nine months' period had expired, on which claim a *scire facias* was issued, which was properly served upon the executor of the estate of Samuel Innes, as well as upon all of the heirs-at-law of the said Samuel Innes, namely, Hugh Innes, Margaret Cunning and William Innes.

Judgment having been taken against all of the parties, the premises were sold by the Sheriff of Montgomery County and purchased by Mary E. Innes, the life-tenant, who received a deed from the sheriff.

We are of the opinion that the sheriff's deed vested in Mary E. Innes a title in fee simple.

In so holding, we are fully aware of the decision of the Supreme Court in the case of Meanor *v.* Goldsmith, 216 Pa. 489, where the court reached a different conclusion on a somewhat similar state of facts.

In that case, however, the claim was filed under the General Borough Act of April 3, 1851, P. L. 320, which does not apply to the Borough of Bridgeport. The court held that the claim for constructing the sidewalk was a personal debt of the life-tenant, and the lien filed against the premises was to enforce that debt and not a proceeding strictly *in rem,* and, hence, bound only

the life-tenant, and the sale under the judgment obtained on the lien conveyed only the life estate.

In the present case, the act creating the Borough of Bridgeport provides that the claim for paving shall become a lien against the *lot*, preferred to every other lien or encumbrance.

In the Meanor case, also, the remaindermen received no actual notice of the proceeding on the claim; here, the *scire facias* was served personally on all of the parties that had any interest, either present or in future, in the premises.

We have not overlooked the fact that the lien shows that only the life-tenant was notified to lay the pavement and that the remaindermen never had an opportunity of complying with the demand of the borough to pave.

Such notice is a prerequisite to the acquisition of a lien by the borough (Mt. Pleasant Borough *v.* Railroad Co., 138 Pa. 365), and the remaindermen might have taken advantage of this lack of notice by filing an affidavit of defense to the *scire facias* issued on the claim, but they remained silent and allowed a judgment to be taken against them, which they are in no position to attack collaterally at the present time.

Counsel for the defendants contends, however, that even if the life-tenant obtained a title in fee simple by the deed of the sheriff, she took it impressed with a resulting trust in favor of the remaindermen.

It is difficult to see just how this resulting trust could arise. There is no evidence of any fraud on the part of the tenant in purchasing the property at the sheriff's sale, and no one contends that it was not bought with her own money.

As life-tenant, she was not in a position of trust to the remaindermen: Fidelity Deposit Co. *v.* Dietz, 132 Pa. 36, cited with approval in Kirkpatrick's Estate, 284 Pa. 583. True, it was her duty to lay the sidewalk: Hitner *v.* Ege, 23 Pa. 305; but even if she wilfully defaulted in the payment thereof, and the estate was lost, the only redress of the remaindermen is an action for damages: Fidelity Deposit Co. *v.* Dietz, *supra.*

Especially is this true in the present case, where all of the remaindermen had actual notice of the proceeding.

We have yet to consider the effect of the petition filed in the Ohphans' Court on Jan. 4, 1918. In this petition, Mary Innes, as administratrix *d. b. n. c. t. a.* of Samuel Innes, asked leave to mortgage certain premises in Bridgeport and Norristown for the purpose of making repairs. The premises in Bridgeport were the same which Mary Innes purchased from the sheriff in 1904. In this petition, Mary Innes treats the Bridgeport property as still the property of the estate of Samuel Innes, and it is now argued that the escheator, who stands in her shoes, is estopped from averring the contrary.

An essential element to an estoppel is that the person claiming it must have been induced to alter his position in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated: 10 Ruling Case Law, 697; Diller *v.* Brubaker, 52 Pa. 498.

So far as the remaindermen are concerned, they have not been injured by the averments of the petition; they have not acted in any way or changed their position by reason of statements made by Mary Innes in her application to mortgage her property.

We are of the opinion that these statements do not work an estoppel in favor of the remaindermen under the will of Samuel Innes.

Turning now to the terre-tenants, Paul Di Giacomo and Teresa, his wife, it will be noted that they have had actual notice of the claim of the escheator and of the sheriff's deed to Mary Innes, and, in addition thereto, of course,

have had constructive notice of the sheriff's deed. They have not settled for the property and are merely in the position of conditional occupiers awaiting the outcome of the present litigation.

The statement of facts does not show that Annie Sullivan is a terre-tenant or is otherwise interested in the case.

It may have been the purpose of Mary Innes to purchase the property at the sheriff's sale for the benefit of her husband's estate, but this intention cannot be gathered from the record that is now before us.

We, therefore, with some regret, come to the conclusion that the title to the premises in question was in Mary E. Innes in fee simple at the time of her death, and as she died without any known heirs, it escheats to the Commonwealth of Pennsylvania.

And now, July 18, 1928, the court finds in favor of the plaintiff for the premises described in the writ.

From Aaron S. Swartz, Jr., Norristown, Pa.